UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMES HAMPTON | No. 25 CR 98<br><br>Hon. John R. Blakey |

## GOVERNMENT'S SENTENCING MEMORANDUM

The UNITED STATES OF AMERICA, by its attorney, ANDREW S. BOUTROS, United States Attorney for the Northern District of Illinois, respectfully submits its sentencing memorandum. Defendant is before this Court for sentencing after being convicted of one count of carjacking and one count of brandishing a firearm during and in relation to a crime of violence. On October 23, 2024, defendant Hampton, along with co-defendants Andy Colon Jr. ("Colon"), Meliza Calderon ("Calderon"), and Angel Burgos Jr. ("Burgos") committed a gunpoint carjacking in Chicago. Based on the seriousness of the offense, and for the reasons described below, the government recommends that the Court sentence defendant to 33 months of imprisonment on Count 2 (carjacking), and a consecutive sentence of 84 months on Count 3 (§ 924(c)), resulting in a total sentence of imprisonment of 117 months, which is a bottom-of-the-guidelines sentence.

## PROCEDURAL BACKGROUND

On February 11, 2026, defendant James Hampton pled guilty to Count 2 and Count 3 of the superseding indictment, which charged him with one count of carjacking in violation of Title 18, United States Code, Section 2119, and one count of brandishing a firearm during and in relation to a crime of violence, in violation of

Title 18, United States Code, Section 924(c)(1)(A)(ii). Defendant pled guilty pursuant to a plea agreement. (Rec. Doc. 117.)

## OFFENSE CONDUCT[1]

In October 2024, co-defendant Calderon met an individual identified in the superseding indictment as Victim A socially, and they agreed to meet at Victim A's residence. After that meeting, Calderon and Victim A continued to communicate, and ultimately agreed to meet on October 23, 2024. On that day, Victim A picked up Calderon at a residence in Des Plaines, Illinois, and then drove to Victim A's residence. Subsequently, Calderon asked Victim A to drive her to a particular location in Chicago. Victim A agreed to do so, and drove his 2019 Dodge Challenger. After arriving at that location, Calderon asked Victim A to drive to a different location, which he did.

Unbeknownst to Victim A, during this time Calderon communicated with co-defendant Burgos about setting up a carjacking of Victim A. PSR ¶ 9. For instance, Calderon sent a message reading, "This N*gga I'm wit got fat ass chain and watch," and "Driving a challenger." Burgos sent a message stating, "Ight I'll send u some where," and "And the guys will handle it," referring that multiple individuals would assist with the carjacking. Calderon also said, "He got no pipe nun he a Paisa," meaning that Victim A did not have a firearm. Calderon continued, "They could have

[1] The information in this section is derived from defendant's plea agreement, the PSR and other materials provided to Probation in connection with the preparation of the PSR. At sentencing, a district court may rely upon information contained in a PSR as long as the information is well supported and appears reliable. *United States v. Salinas*, 365 F.3d 582, 587 (7th Cir. 2004).

the car and the watch idc I want the wallet and his chain," referring to the fact that Burgos and the individuals who would be waiting to commit the carjacking could take Victim A's vehicle and watch, and Calderon wanted to keep Victim A's wallet and chain.

After arriving at the planned location, Victim A did not put the vehicle into park because he was suspicious of the area. However, Calderon reached over to the gear shift to attempt to place the Challenger into park. Victim A and Calderon then physically struggled over the gear shift. Meanwhile, defendant Hampton and Colon approached Victim A's vehicle armed. PSR ¶ 10. Both defendant and Colon brandished firearms, and defendant said to Victim A, "Don't be stupid," meaning that he would shoot Victim A if Victim A did not comply. *Id.* Defendant and Colon removed property from Victim A's person, including a watch, gold necklace, and phone. *Id.* Subsequently, Colon and defendant joined Calderon in the Challenger and they drove away. *Id.*

Victim A called 9-1-1 using a bystander's telephone, and the Chicago Police Department ("CPD") responded within minutes. While CPD officers were interviewing Victim A, he observed the Challenger driving at a high rate of speed down the street. CPD gave chase utilizing lights and sirens, until the Challenger rode up onto a sidewalk. Defendant, Colon and Calderon fled from the vehicle but were all apprehended. A loaded Ruger pistol was recovered from the front seat of the vehicle.

Unsurprisingly, the carjacking had a significant emotional impact on Victim A, who has previously reported to the government that as a result of the incident, he suffers from trust issues, avoids leaving his house, and deleted his social media presence. Additionally, Victim A suffered financial loss of $2,000, and his insurance company, Fred Loya Insurance Company, suffered financial loss of $11,443.95.

**SENTENCING GUIDELINES CALCULATIONS**

The government agrees that the base offense level for Count Two is 20, pursuant to Guideline § 2B3.1(a). The government also agrees that two levels are added because the offense involved carjacking, pursuant to Guideline § 2B3.1(b)(5).

The government agrees that defendant has demonstrated acceptance of responsibility for the offense, and that he timely notified the government of his intention to plead guilty, and therefore, the offense level is decreased by three levels pursuant to Guideline § 3E1.1. Therefore, the United States Probation Office ("USPO") correctly determined that defendant's total offense level for Count Two is 19. The government also concurs with USPO's conclusion that defendant's criminal history category is II, which results in an advisory guidelines range for Count Two of 33 to 41 months.

The guidelines range for Count Three is 84 months imprisonment, which must run consecutively to the sentence imposed on Count Two. Therefore, the total guidelines range for both counts is 117 to 125 months imprisonment.

## THE FACTORS SET FORTH IN 18 U.S.C. § 3553(A)

Section 3553(a) requires the Court to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing.[2] In order to determine the sentence to impose, the court must consider the statutory factors listed in § 3553(a)(1)-(7). One of those factors is the advisory range set by the Sentencing Guidelines, and another is the Sentencing Commission's policy statements. Although the Sentencing Guidelines are advisory only, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). For the reasons set forth below, consideration of the § 3553(a) factors reflect that within-guidelines sentence of 117 months is warranted.

*The Nature and Circumstances of the Offense*

The nature and circumstances of defendant's offenses are egregious. Defendant committed a dangerous armed carjacking in which Victim A's vehicle and personal property were stolen at gunpoint. Short of murder, armed robberies are "as serious as it gets." *United States v. Sisk*, 850 Fed. App'x 979, 980 (7th Cir. 2021); *United States v. Raphael*, 487 Fed. App'x 490, 502 (11th Cir. 2012) (affirming 660-month sentence for Hobbs Act robbery). Moreover, defendant personally possessed and brandished a firearm, and defendant told Victim A, "Don't be stupid," which was

[2] Those purposes are the need for the sentence "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

a veiled threat that if Victim A did not comply, defendant would shoot Victim A. Although Victim A fortunately was not physically harmed during the incident, the carjacking was committed on a public street in Chicago, and the gunpoint robbery carried an inherent risk of violence and death. Moreover, defendant and his co-conspirators led CPD on a high-speed chase, which only ended when Victim A's vehicle was disabled after riding up onto the sidewalk. Even at that point, defendant and his co-conspirators attempted to flee from the police on foot. In short, the nature and circumstances of the offense weigh in favor of a guidelines sentence.

*History and Characteristics of the Defendant*

Defendant is 19 years old and is a resident of Chicago, Illinois. Defendant's criminal history is described in the PSR. *See* PSR ¶ 35. The government recognizes that defendant's youth and difficult childhood circumstances are mitigating, although the government disagrees that this mitigation warrants a below-guidelines sentence. However, in light of these mitigating circumstances, the government is recommending a sentence at the bottom of the guidelines.

*The Need to Promote Respect for the Law,*
*Provide Just Punishment, and Afford Adequate Deterrence*

A sentence above the advisory guidelines range would promote respect for the law, provide just punishment, and afford adequate deterrence. As noted, the defendant's conduct is serious: he committed a terrifying armed carjacking, in which defendant brandished a firearm. Defendant's sentence in this case should provide just punishment for such a serious offense, and should deter defendant from committing future crimes including future violent offenses. Moreover, a sentence

within the guidelines should send a message that this type of conduct, particularly in Chicago where violent crime is unfortunately to common, will result in a significant sentence of imprisonment.

*Restitution*

As described in defendant's plea agreement, defendant owes Victim A $2,000 and Fred Loya Insurance Company $11,443.95 in restitution, which is owed jointly and severally with his co-defendants. The UPSO concluded that defendant does not have the ability to make full or partial lump sum payments toward restitution, and the government concurs that the Court should order defendant to contribute to restitution through the Inmate Financial Responsibility Program and on an installment basis after his release from imprisonment.

*Supervised Release*

The government agrees with the Probation Office's recommendation to impose a term of supervised release in order to provide additional specific deterrence to the defendant and to assist with his rehabilitation following his custodial term of imprisonment. Consistent with the Seventh Circuit's guidance in *United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015), and consistent with USPO's recommendation, the government recommends the imposition of a term of supervised release of three years. In order to promote the sentencing objectives of deterring recidivism, protecting the public, and assisting in the defendant's rehabilitation and reintegration into society, the government supports Probation's recommendation that the term of supervised release include the conditions set forth in the PSR.

## CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court impose a bottom-of-the guidelines sentence of imprisonment of 33 months on Count 2, followed by a consecutive sentence of imprisonment of 84 months on Count 3, resulting in a total sentence of 117 months imprisonment.

Dated: April 29, 2026

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: */s/ Jonathan L. Shih*

JONATHAN L. SHIH
Assistant United States Attorney
219 S. Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-5361

**CERTIFICATE OF SERVICE**

I, Jonathan L. Shih, hereby certify that on April 29, 2026, I electronically filed the foregoing **GOVERNMENT'S SENTENCING MEMORANDUM** with the Clerk of the Court for the United States District Court for the Northern District of Illinois by using the Case Management/Electronic Case Files (CM/ECF) system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

By: *<u>/s/ Jonathan L. Shih</u>*

JONATHAN L. SHIH
Assistant United States Attorney
219 S. Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-5361